UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

R<span>OBERT</span> A<span>NNABEL</span>, II #414234,

       Plaintiff,                                Hon. Gordon J. Quist

v.                                                Case No. 1:18-cv-914

M<span>ICHIGAN</span> D<span>EPARTMENT OF</span>
C<span>ORRECTIONS</span>, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Summary Judgment (ECF No. 120) and Defendants' Motion for Summary Judgment (ECF No. 126). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be denied, Defendants' motion be granted, and this action terminated.

## BACKGROUND

Plaintiff initiated this action on August 14, 2018, against the Michigan Department of Corrections (MDOC) and ten individuals. The Court subsequently dismissed Plaintiff's claims against seven of the individual defendants on misjoinder grounds, leaving as defendants the MDOC, Michael Martin, Casey Cheney, and James Long. (ECF No. 4). Plaintiff later amended his complaint, adding as a defendant David Leach. (ECF No. 33). In his amended complaint, Plaintiff asserts the following.

On March 2, 2009, Plaintiff initiated an action in this Court alleging, in part, that his right to freely practice his religion was being violated. *Annabel v. Caruso*, 1:09-cv-176 (W.D. Mich.). The parties ultimately reached agreement on a settlement pursuant to which the MDOC agreed, in part, to the following: (1) when Plaintiff's "mental health needs allow," Plaintiff "may participate in the kosher diet" pursuant to MDOC policy; and (2) Plaintiff "may enlist a member of the clergy to administer grape juice to him on the evening before Passover" pursuant to applicable MDOC policies. The parties further agreed that if Plaintiff's mental health needs "require him to be housed at a non-kosher facility . . . Plaintiff will be removed from the kosher diet for the period of time necessary to treat his mental health condition."

Following the execution of this agreement, Plaintiff was provided with kosher Passover meals in 2014, 2015, and 2016. In 2017, Defendant Cheney "secretly imposed a new deadline for Plaintiff to request Passover meals." As a result, Plaintiff "was denied most 2017 Passover meals." Plaintiff then sought to enforce the settlement agreement, but his motion was denied as the Court concluded that it lacked jurisdiction. In response, Defendants Martin, Cheney, Long, and Leach retaliated against Plaintiff by "imposing a change of contract interpretation that wholly excludes the Passover meals that Plaintiff had sought to enforce."

In January 2018, Plaintiff again requested Passover meals. Plaintiff's request was denied, however, "based on the retaliatory contract interpretation" as well as the fact that Plaintiff was identified in MDOC records as a member of "other faiths" instead

of Jewish. Plaintiff subsequently changed his religious affiliation to Jewish and again requested Passover meals. On March 8, 2018, Plaintiff was administered "the test for Jewish kosher meal eligibility," but was nevertheless denied Passover meals from March 31, 2018, through April 6, 2018.

Plaintiff advances several claims: (1) Defendants' actions prevented him from freely practicing his religion in violation of RLUIPA[1] and the First Amendment; (2) Defendants subjected him to unlawful retaliation in violation of his First Amendment rights; (3) Defendants denied him the equal protection of the laws in violation of his Fourteenth Amendment rights; and (4) Defendants committed breach of contract by failing to abide by the terms of the settlement agreement negotiated in previous litigation. Plaintiff and Defendants now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party

---

[1] With respect to Plaintiff's RLUIPA claims, the Court previously dismissed (1) RLUIPA claim for damages against the MDOC; (2) RLUIPA claims asserted against the individual defendants in their personal capacity; and (3) RLUIPA claims against the individual defendants seeking money damages. (ECF No. 6). The Court also dismissed Plaintiff's §1983 claims against the MDOC. (*Id.*).

demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I. First Amendment

Plaintiff alleges that Defendants Martin, Leach, Cheney, and Long denied him Passover meals in 2017 and 2018 in violation of his First Amendment right to freely practice his religion. It is important to note that Plaintiff's claim does not concern whether he was denied a daily religious diet accommodation, such as the MDOC's kosher meal option. Instead, Plaintiff's claim, as articulated in his amended complaint (ECF

No. 33), is limited to his alleged failure to receive special Passover meals during the 2017 and 2018 Passover seasons. To the extent statements in other pleadings suggest otherwise, such are irrelevant as the nature and scope of Plaintiff's claims is determined by his amended complaint.

    A.    Legal Standard

As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).

To demonstrate that his right to freely practice his religion has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held, and (3) Defendant's behavior infringes upon his practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same). Even if Plaintiff makes this showing, such does not end the analysis because the fact that "prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Wolfish*, 441 U.S. at 545; *see also, Arauz*

*v. Bell*, 307 Fed. Appx. 923, 928 (6th Cir., Jan. 22, 2009) (even if a prisoner demonstrates a violation of his First Amendment rights, the defendant is entitled to relief if his action is reasonably related to legitimate penological interests).

Operating a prison is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.  Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85.  The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Id*. at 89.  This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting

*Shabazz*, 482 U.S. at 349).   The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors.   If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest.   It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint."   Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest.   *Flagner*, 241 F.3d at 484.

With respect to which party bears the burden concerning the *Turner* analysis, the Supreme Court has held that "[t]he burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  This statement clearly places on the prisoner the burden as to the last three *Turner* factors, but says nothing as to which party bears the burden as to the initial factor.  As subsequent courts have concluded, the burden to articulate the rationale for a challenged action must rest with prison officials.  As the Sixth Circuit observed:

> We note that while the burden is on the prisoner to disprove the validity of the regulation at issue. . .Defendants must still articulate their interest in the regulation. . .Otherwise, a prisoner would be forced to hypothesize any number of potential legitimate penological interests and then disprove a reasonable relationship between each and the regulation at issue.

*Figel v. Overton*, 121 Fed. Appx. 642, 646 n.2 (6th Cir., Feb. 4, 2005) (internal citations omitted); *see also*, *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012) ("the prison has the burden of demonstrating the First *Turner* Factor").  The Court concludes, therefore, that with respect to the *Turner* factors, Defendants bear the initial burden to articulate a valid, rational connection between the challenged action and the legitimate governmental interest which motivated such.  This burden is "slight, and in certain instances, the connection may be a matter of common sense."  *Johnson*, 669 F.3d at 156.

-9-

B.  Analysis

Pursuant to MDOC policy, "prisoners shall be permitted to observe religious fasts and feasts that are necessary to the practice of their religion." MDOC Policy Directive 05.03.150 ¶ WW (eff. Sept. 15, 2015). Thus, prisoners who identify as Jewish are permitted to participate in Passover activities and receive Passover meals. (ECF No. 121-2, PageID.893). Specifically, "Passover meals provided by food service are given to Jewish prisoners who currently receive religious meal accommodation and who request it." (ECF No. 124-4, PageID.1041).

According to Defendant Cheney, the ICF Chaplain, Plaintiff failed to submit a request to receive Passover meals in 2017. (ECF No. 121-7, PageID.923). Plaintiff conceded in his deposition that he failed to timely request to participate in Passover meals in 2017. (ECF No. 127-3, PageID.1110). Nevertheless, once prison officials became aware of Plaintiff's desire to receive Passover meals, his request was accommodated. (ECF No. 121-7, PageID.923). Plaintiff conceded that, in 2017, he "missed like the first three days" of Passover, but otherwise was provided with Passover meals that year. (ECF No. 127-3, PageID.1110).

While Plaintiff was, therefore, denied Passover meals for three days in 2017, such was the result of Plaintiff's inaction rather than conduct attributable to Defendants. As such, it cannot be said that Defendants violated Plaintiff's First Amendment rights. However, even if this deprivation was attributable to Defendants, that Plaintiff was denied Passover meals for three days does not violate his First Amendment rights. *See,*

*e.g., Lewis v. Zon*, 920 F.Supp.2d 379, 385 (W.D.N.Y. 2013) ("it is well settled that periodic or temporary denial of religious meals does not constitute 'substantial' interference with free exercise, and is insufficient to establish a First Amendment claim"); *Wright v. Bibens*, 2018 WL 5724009 at *5 (D. Conn., Nov. 1, 2018) (same). Moreover, even if this circumstance is found to have violated Plaintiff's constitutional rights, such resulted from the application of policies and procedures that serve legitimate penological interests and, therefore, preclude a finding for Plaintiff.

The MDOC requirement that prisoners specifically request to receive Passover meals easily satisfies the *Turner* analysis articulated above. There exists a valid, rational connection between this requirement and the need by prison officials to ensure that prisoners' religious dietary needs are being accommodated efficiently and to the greatest extent possible. As the MDOC's Special Activities Coordinator asserts, the requirement that prisoners submit a written request to receive Passover meals "ensure(s) food service operations continue to run smoothly and efficiently, which is critical to the overall safety and administration of the MDOC prisons, as it allows MDOC prisons to reasonably and judiciously use the limited resources available to MDOC while ensuring consistency in treatment of prisoners, a critical part to the safety and management of the MDOC prisons." (ECF No. 124-4, PageID.1041-42). None of the remaining *Turner* factors weigh in Plaintiff's favor. Finally, there is nothing in the 2012 settlement agreement that mandated that Plaintiff be provided Passover meals or

excused Plaintiff from the requirement that he specifically request such. (ECF No. 124-3, PageID.1035-38).

Accordingly, with respect to Plaintiff's claim that he was denied Passover meals in 2017 in violation of his First Amendment rights, the undersigned recommends that Plaintiff's motion for summary judgment be denied and Defendants' motion for summary judgment be granted. With respect to Plaintiff's claim that he was denied Passover meals in 2018 in violation of his First Amendment rights, the Court reaches the same conclusion.

Prior to 2018, Plaintiff did not identify as Jewish, but instead reported his religious preference as "other faiths." (ECF No. 121-3, PageID.899). On or about January 20, 2018, Plaintiff submitted a request to receive Passover meals. (ECF No. 121-15, PageID.967). On February 24, 2018, however, Plaintiff changed his religious preference from "other faiths" to Jewish. (ECF No. 121-14, PageID.965). Pursuant to MDOC policy, when a prisoner changes his religious affiliation, his approval to receive special religious meals is terminated "unless a new request [to receive special religious meals] is received and approved." MDOC Operating Procedure 05.03.150A ¶ F (eff. June 26, 2017). At his deposition, Plaintiff acknowledged that he was aware, when he changed his religious preference, that doing so would result in a temporary denial of his religious dietary accommodations. (ECF No. 127-3, PageID.1111). After changing his religious affiliation, Plaintiff submitted a renewed request for religious dietary accommodation. (ECF No. 127-3, PageID.1111). Plaintiff's request was

processed, but not ultimately approved until after the completion of 2018 Passover season. (ECF No. 127-3, PageID.1111-12; ECF No. 127-5, PageID.1124-27; ECF No. 127-6, PageID.1129-32). Plaintiff has presented no evidence that his request for dietary accommodation was not properly or timely processed.

Even if the Court assumes that Plaintiff's denial, in 2018, of Passover meals violated his First Amendment rights, Defendants are still entitled to relief. The MDOC policy that prisoners forego their religious dietary accommodation when changing their religious preference satisfies the *Turner* analysis articulated above. There exists a valid, rational connection between this requirement and the need by prison officials to efficiently manage their limited resources and ensure that prisoners are treated fairly and consistently. Prison officials also have a legitimate interest is ensuring that prisoners requesting religious dietary accommodation do so only for legitimate reasons. Moreover, it is not unreasonable to require a prisoner to temporarily forego a benefit, obtained to accommodate his stated religious beliefs, when that prisoner asserts that his religious beliefs have changed or modified. None of the remaining *Turner* factors weigh in Plaintiff's favor and, again, there is nothing in the 2012 settlement agreement that permitted Plaintiff to bypass MDOC policies and procedures when changing his religious preference or seeking religious dietary accommodation.

Accordingly, with respect to Plaintiff's claim that he was denied Passover meals in 2018 in violation of his First Amendment rights, the undersigned recommends that Plaintiff's motion for summary judgment be denied and Defendants' motion for summary judgment be granted.

## II. RLUIPA

Plaintiff alleges that Defendants Martin, Leach, Cheney, and Long denied him Passover meals in 2017 and 2018 in violation of his rights under RLUIPA. RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). While RLUIPA does not define the phrase "substantial burden," it has been interpreted as encompassing governmental action that "places substantial pressure on an adherent to modify his behavior and to violate his beliefs or effectively bars his sincere faith-based conduct." *Fox v. Washington*, 949 F.3d 270, 278 (6th Cir. 2020); *see also*, *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise). However, a burden is less than "substantial" where it imposes a "mere inconvenience" on religious exercise. *See, e.g., New Doe Child #1 v. Congress of United States*, 891 F.3d 578, 590 (6th Cir. 2018).

As discussed above, Plaintiff's three-day deprivation of Passover meals in 2017 was due to Plaintiff's conduct rather than conduct attributable to Defendants. As for Plaintiff's failure to receive Passover meals in 2018, such was because Plaintiff's request for religious meal accommodation had to first be processed and approved. Requiring Plaintiff to await this process hardly constitutes an exceptional burden, but rather is more accurately characterized as a "mere inconvenience." *See, e.g., Maynard v. Hale*, 2012 WL 3401095 at *5 (M.D. Tenn., Aug. 14, 2012) (where prisoner was deprived of Ramadan meals due to "administrative bungling," such did not rise to level of a substantial burden as prisoner was still able to practice his religion and was not otherwise denied adequate nutrition).

Moreover, as discussed above, the MDOC has a legitimate interest in ensuring that its program of religious dietary accommodation is administered fairly and efficiently. While the "lease restrictive means" standard is demanding, Defendants are "under no obligation to dream up alternatives that the plaintiff has not himself proposed." *Christian Separatist Church Society of Ohio v. Ohio Department of Rehabilitation and Correction*, 2018 WL 1569744 at *4 (S.D. Ohio, Mar. 30, 2018). Furthermore, prison security constitutes a "compelling state interest" and the Court must defer to prison officials' expertise regarding such. *Ibid.* In sum, the Court finds that the MDOC's dietary accommodation application process constitutes the least restrictive means of furthering a compelling governmental interest.

Accordingly, with respect to Plaintiff's RLUIPA claims, the undersigned recommends that Plaintiff's motion for summary judgment be denied and Defendants' motion for summary judgment be granted.

### III. Retaliation

As noted above, Plaintiff was temporarily denied Passover meals for three days in 2017. Plaintiff objected to this deprivation and, subsequently, moved to enforce the 2012 settlement agreement he negotiated in the matter discussed above. Plaintiff asserts that after taking these actions Defendants Martin, Leach, Cheney, and Long unlawfully retaliated against him in violation of his First Amendment rights.

To prevail on his retaliation claims, Plaintiff must satisfy three elements: (1) he was engaged in constitutionally protected conduct; (2) a defendant took adverse action against him which would deter a person of ordinary firmness from continuing to engage in protected conduct; and (3) the adverse action was motivated by Plaintiff's protected conduct. *See Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010). Plaintiff's claims fail at steps 2 and 3.

With respect to step 2, Plaintiff asserts that in response to his protected conduct, Defendants "maliciously began imposing a change of contract interpretation that wholly excludes the Passover meals that Plaintiff had sought to enforce." (ECF No. 33, PageID.369-70). The settlement agreement Plaintiff negotiated in 2012 contains no provision which mandated that he be provided Passover meals or excused Plaintiff from the requirement that he specifically request such or otherwise comply with relevant

MDOC policies and requirements. (ECF No. 124-3, PageID.1035-38). Thus, Plaintiff cannot establish that Defendants undertook any adverse action against him which would deter a person of ordinary firmness from engaging in protected conduct. To the extent Plaintiff misinterprets the terms of the settlement he negotiated such is not attributable to Defendants.

With respect to causation, courts recognize that retaliation is easy to allege and "is often very difficult to prove with direct evidence." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399. Conclusory allegations of retaliatory motive are insufficient, however. *See Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004). Instead, Plaintiff must, at a minimum, allege a chronology of events from which retaliation can plausibly be inferred. *See Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998). Moreover, as the Supreme Court recently held, when alleging retaliation "it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019).

-17-

Plaintiff has presented no evidence that the MDOC policies, the enforcement of which caused Plaintiff to not receive Passover meals in 2017 and 2018, were enacted or enforced against Plaintiff in response to Plaintiff's protected conduct. Plaintiff has likewise presented no evidence that the applicable policies were administered in an inconsistent, discriminatory, or retaliatory manner. Simply put, Plaintiff has failed to establish that his protected conduct was a motivating factor in Defendants' alleged conduct. Accordingly, with respect to Plaintiff's retaliation claims, the undersigned recommends that Plaintiff's motion for summary judgment be denied and Defendants' motion for summary judgment be granted.

### IV.   Equal Protection

Plaintiff alleges that Defendants' actions violated his right to the equal protection of the law. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To establish an equal protection claim, Plaintiff must establish "that the government treated [him] disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Plaintiff has failed to present evidence that would entitle him to relief on this claim. Accordingly, with respect to Plaintiff's equal protection claims, the

undersigned recommends that Plaintiff's motion for summary judgment be denied and Defendants' motion for summary judgment be granted.

## V.     Breach of Contract

Finally, Plaintiff alleges that Defendants' failure to abide by the terms of the settlement agreement he negotiated in 2012 constitutes breach of contract. Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction." Indeed, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Taylor v. First of America Bank - Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also*, *Bah v. Attorney General of the State of Tennessee*, 610 Fed. Appx. 547, 555 (6th Cir., May 8, 2015) (same). Accordingly, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's state law claims and instead dismiss such without prejudice so that Plaintiff may pursue such in the appropriate state forum.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment (ECF No. 120) be denied; Defendants' Motion for Summary Judgment (ECF No. 126) be granted; and this action terminated.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                Respectfully submitted,

Date: November 6, 2020                      /s/ Phillip J. Green
                                                PHILLIP J. GREEN
                                                United States Magistrate Judge